IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| JOHN RICHARD HARTNESS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Case No. 14-CV-0695-CVE-JFJ |
| JASON BRYANT, Warden[1] | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is petitioner John Hartness's 28 U.S.C. § 2241 petition for writ of habeas corpus (Dkt. # 1).[2] Respondent Jason Bryant filed a response (Dkt. # 5) and provided copies of relevant portions of the state court record (Dkt. ## 5, 6). Hartness filed a reply to the response (Dkt. # 9). For the reasons discussed below, the Court shall dismiss in part and deny in part the petition for writ of habeas corpus.

### *BACKGROUND*

Hartness brings this habeas petition to challenge both the validity and the revocation of his suspended sentence in Osage County District Court Case No. CF-99-230. Dkt. # 1 at 1. In that case, on April 24, 2000, Hartness pleaded guilty to (1) knowingly concealing stolen property, in violation of OKLA. STAT. tit. 21, § 1713, and (2) possessing methamphetamine, in violation of OKLA. STAT.

---

[1] Hartness is incarcerated at the James Crabtree Correctional Center (JCCC). Jason Bryant, the current warden of JCCC, is therefore substituted in place of Janet Dowling as the party respondent. See Rule 2(a), Rules Governing § 2254 Cases in the United States District Courts. The Clerk of Court shall note the substitution on the record.

[2] Because Hartness appears pro se, the Court must liberally construe his pleadings. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

tit. 63, § 2-402(B)(1), after former conviction of six felonies. Dkt. # 6-1 at 7-8. As part of the negotiated plea agreement, the district attorney agreed to file a written application requesting that the state district court waive the statutory prohibition against imposing a suspended sentence given that Hartness had been convicted of two or more felonies.³ Id. at 9-10. In accordance with the plea agreement, the court sentenced Hartness to two concurrent terms of 45 years in prison, with all but the first seven years suspended.⁴ Id. at 1, 7, 11. The court advised Hartness that if he wished to appeal he "must file a written request to withdraw his plea of guilty within 10 days" of sentencing. Id. at 13. Hartness did not seek to withdraw his plea or file a certiorari appeal with the Oklahoma Court of Criminal Appeals (OCCA). See id.; Dkt. # 1 at 2.

On March 24, 2006, the state district court held a hearing on the state's motion to revoke Hartness's suspended sentence. Dkt. # 6-2 at 1-2. Hartness stipulated that he violated his probation by being convicted of two new crimes in Tulsa County District Court Case No. CF-2003-5713. Id. at 3-4. The court partially revoked Hartness's suspended sentence and ordered him to serve eight years in prison, concurrent with his sentence in the 2003 Tulsa County case. Id. at 4-5. The court advised Hartness that if he wished to filed a direct appeal he must file a notice of intent to appeal within 30 days of the revocation hearing. Id. at 5-6. Hartness did not file a direct appeal. Id.; Dkt. # 1 at 2.

---

3   Under Oklahoma law, district courts ordinarily are prohibited from imposing suspended sentences for "defendants being sentenced upon their third or subsequent to their third conviction of a felony." OKLA. STAT. tit. 22, § 991a(C) (Supp. 2016). However, §991a(C) was amended, effective July 1, 1999, to permit district courts to waive that statutory prohibition "on written application of the district attorney." See 1999 Okla. Sess. Laws, 2326-28.

4   Because the court ordered the two sentences to be served concurrently, this Court will hereafter refer to Hartness's suspended sentences as one suspended sentence.

On January 25, 2012, the state again moved to revoke Hartness's suspended sentence, alleging that he (1) failed to pay court costs and (2) committed new crimes in Tulsa County District Court Case No. CF-2011-2873. Dkt. # 6-3 at 2-3. The state district court held a revocation hearing on September 5, 2012, and Hartness stipulated to the alleged probation violations. Id. at 1, 3. After hearing oral argument from counsel and testimony from Hartness, the court fully revoked Hartness's suspended sentence and ordered him to serve 30 years in prison, consecutive to his 14-year sentence in the 2011 Tulsa County case. Id. at 5-12. The court advised Hartness of his appeal rights. Id. at 12.

Hartness filed a direct appeal with the OCCA, arguing that the full revocation of his suspended sentence was "excessive" under the circumstances. Dkt. # 5-3 at 2. He also sought an order nunc pro tunc to clarify the revocation order. Id. By opinion filed February 11, 2014, the OCCA affirmed the revocation order, concluding that the district court did not abuse its discretion in revoking Hartness's suspended sentence in full. Id. at 1-2. The OCCA declined to issue an order nunc pro tunc because Hartness did not first request that order from the district court. Id. at 3.

On April 30, 2014, Hartness applied for state post-conviction relief on two grounds: (1) that he did not fully appreciate the sentencing consequences of his plea agreement, and (2) that his suspended sentence was "illegal" because he had multiple prior felonies. Dkt. # 5-4 at 1-5. The state district court denied relief, reasoning that both grounds were procedurally barred because they "could have been raised on direct appeal from the 2000 conviction but were not." Dkt. # 5-5.

Hartness filed a post-conviction appeal, asserting the same two grounds for relief and adding two more: (1) that defense counsel was ineffective on direct appeal for failing to argue under

3

Bumpus v. State, 925 P.2d 1208 (Okla. Crim. App. 1996), that his suspended sentence was void,[5] and (2) that the court should "consider the updated federal sentencing guidelines" because they "now carry substantially less penalties than at the time he was convicted." Dkt. # 5-6 at 5-9. By order filed October 23, 2014, the OCCA affirmed the state district court's order denying post-conviction relief. Dkt. # 5-7. The OCCA agreed that Hartness's first two claims were procedurally barred. Id. at 2. But the OCCA briefly addressed his argument that his suspended sentence was void. Id. Citing Bumpus, the OCCA stated that "[w]hen an unauthorized order of suspension is entered by a sentencing court, the remaining portions of the Judgment and Sentence remain intact; only that portion of the court's order suspending execution of the sentence is invalid." Id. Thus, the OCCA reasoned, even if the district court erred in imposing a suspended sentence, that error "would be corrected by the District Court's subsequent order revoking [Hartness's] suspended sentences." Id. The OCCA declined to address Hartness's ineffective-assistance-of-appellate-counsel claim because it "was not raised in the District Court." Id. The OCCA did not mention Hartness's request that the OCCA consider the updated federal sentencing guidelines. Id. at 1-3.

---

[5]  In Bumpus, the OCCA interpreted OKLA. STAT. tit. 22, § 991a(C) before it was amended to permit the district court to waive the prohibition against suspended sentences for defendants with two or more prior felony convictions. See 925 P.2d at 1209 (referring to 1995 version of sentencing statute). In that case, "there was no admission by [defendant] at or prior to his guilty plea as to the truth of the allegations of prior convictions" and the district court imposed a five-year suspended sentence. Id. at 1210. At his subsequent revocation hearing, the defendant admitted under oath that he had at least two prior felony convictions at the time he was sentenced. Id. The OCCA found that the original sentencing order was not "void upon its face" but became "voidable" when evidence of his prior convictions arose at his revocation hearing. Id. The OCCA therefore vacated the defendant's sentence and held that the defendant was entitled to an opportunity to either withdraw his guilty plea and go to trial or stand on his guilty plea and have the district court order the immediate execution of his five-year sentence. Id. at 1210-12.

4

Hartness filed the instant § 2241 petition for a writ of habeas corpus on November 19, 2014. Dkt. # 1 at 1. He seeks federal habeas relief on the following grounds:

Ground One: The order of revokation [sic] is excessive based on the facts and circumstances in this case.

Ground Two: Even though the trial court advised me of my rights, it is apparent that I had not had ample time for deliberation, and I was laboring under a misaprehension [sic] of those rights and did not fully appreciate the consequences of this plea agreement.

Ground Three: Because I was not entitled to receive a split sentence, the suspended sentence should be void.

Ground Four: O.I.D.S. defense counsel was ineffective for failing to raise on direct appeal the issues I raised in my postconviction relief.

Ground Five: I ask the court to consider the updated Federal Sentencing Guidelines. These NON-VIOLENT property and simple possession charges from 2000 now carry substantially lower penalties than at the time I was convicted.

Dkt. # 1 at 5, 7, 8, 10, 12.

In response to the petition, Bryant concedes that the claims raised in Grounds One and Four are timely under § 2244(d) and exhausted under § 2254(b)(1)(A). See Dkt. # 5 at 2. But he contends that Hartness is not entitled to habeas relief on these claims because Ground One alleges an error of state law that is not cognizable on habeas review and Ground Four is procedurally defaulted. Id. at 4-7, 13-16. Bryant further contends that Hartness has not demonstrated cause for the default, actual prejudice, or that failure to review the defaulted claim would result in a miscarriage of justice. Id. at 14-17. Bryant concedes that the claims raised in Grounds Two, Three and Five are exhausted, but he contends that these claims are time barred because they challenge the imposition, rather than the revocation, of Hartness's suspended sentence. Id. at 2, 7-10. Bryant

5

further contends that Hartness has not demonstrated that he is entitled to either statutory or equitable tolling. Id. at 10-12.

Hartness filed a reply brief, raising several "objections" to the response, alleging that he is entitled to "tolling" for any time barred claims, and asserting "cause and prejudice" warrants review of any procedurally defaulted claims to avoid a "miscarriage of justice." Dkt. # 9 at 3, 7, 9-11. Hartness also requests an evidentiary hearing on the "issue of exhaustion" and seeks appointment of counsel.[6] Id. at 8, 13.

## *ANALYSIS*

Initially, the Court notes that some claims raised in Hartness's § 2241 habeas petition appear to challenge the validity of his suspended sentence while other claims appear to challenge only the revocation of his suspended sentence. See Dkt. # 1. The Tenth Circuit has explained that "a state prisoner's federal habeas challenge to the validity of an underlying conviction or sentence must typically be brought under § 2254." Leatherwood v. Allbaugh, 861 F.3d 1034, 1042 (10th Cir. 2017). However, "[a] state prisoner's challenge to the revocation of a suspended sentence is properly brought under § 2241" because it challenges the execution, rather than the validity, of the sentence. Id. at 1041-42. Thus, to the extent that Hartness's claims challenge the revocation of his suspended sentence, the Court will adjudicate his petition under § 2241. And, to the extent that his

---

[6] As noted, Bryant concedes that Hartness exhausted each of his asserted claims. Thus, the Court denies Hartness's request for an evidentiary hearing on the "issue of exhaustion." Additionally, upon review of the pleadings and the state court record, the Court finds that an evidentiary hearing is not warranted on any other issues. See Rule 8(a), Rules Governing §2254 cases in the United States District Courts. The Court also finds no basis for granting Hartness's request for appointment of counsel and therefore denies that request. See Rule 8(c), Rules Governing §2254 cases in the United States District Courts.

claims challenge the validity of his suspended sentence, the Court will adjudicate his petition under § 2254.

**A.      Ground One fails to state a cognizable habeas claim**

In Ground One, Hartness contends that the state district court's decision to revoke his suspended sentence in full was "excessive under the facts and circumstances in this case." Dkt. # 1 at 5. In support, Hartness alleges that in the time leading up to the 2012 revocation, he "was struggling with relapse due to the tragic loss of [his] son and the use of prescription painkillers after a near fatal motorcycle accident." Id. He also points out that he received a 14-year prison sentence in his 2011 Tulsa County case for possessing drugs with intent to distribute, but he ultimately will serve his full 45-year prison sentence in his 2000 Osage County case for simple drug possession. Id.

Hartness presented these same arguments to the OCCA in his direct appeal from the 2012 revocation order. See Dkt. # 5-1 at 8-12. There, relying solely on state law, Hartness argued that the state district court abused its discretion when it fully revoked his suspended sentence. Id. In doing so, he acknowledged that "revoking all of [his] suspended sentence is legally permissible," but argued that the full revocation did not "bear a direct relationship to the nature and circumstances of the offense." Id. at 8. The OCCA rejected Hartness's arguments, finding, "upon the record presented," that the state district court did not abuse its discretion. Dkt. # 5-3 at 2.

Bryant contends that Hartness's Ground One claim alleges only an error of state law, not a cognizable habeas claim. Dkt. # 5 at 4-7. In his reply brief, Hartness asserts that his "custody is in violation of the U.S. Constitution's life, liberty, and due process protections and safeguards," and that his sentence "is a shocking abuse of judicial discretion." Dkt. # 9 at 2.

7

Because this claim challenges the revocation of Hartness's suspended sentence, it is properly brought under § 2241 and subject to de novo review. See Leatherwood, 861 F.3d at 1042-43 (explaining that habeas claims raised in § 2254 petitions are reviewed under § 2254(d)'s deferential standards whereas habeas claims raised in § 2241 petitions are reviewed de novo).

Applying de novo review, the Court agrees with Bryant that Hartness's Ground One claim alleges only an error of state law. As Bryant contends, the sentencing of state prisoners is generally a matter of state law. Consequently, federal habeas courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2002). Likewise, a state trial court's decision to revoke a suspended sentence is governed by state law, and challenges to that decision are not generally constitutionally cognizable, unless it is shown that the "decision is so fundamentally unfair that it implicates federal due process." Leatherwood, 861 F.3d at 1043.

In his habeas petition, Hartness does not suggest that the state district court's decision to revoke his sentence in full violated his federal constitutional rights. See Dkt. # 1 at 5. Rather, Hartness primarily reasserts his abuse-of-discretion argument from State court: that the state district court should not have fully revoked his suspended sentence because (1) he was dealing with substance abuse issues and the death of his son and (2) the revocation resulted in him serving more prison time in the 2000 Osage County case than in his 2011 Tulsa County case. Id. Thus, he essentially asks this Court re-examine the OCCA's determination that the state district court did not abuse its discretion. But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, the

Court finds that Hartness's Ground One claim alleges an error of state law, not a cognizable habeas claim.[7]

Moreover, the Court finds that Hartness's general references in his reply brief to "due process protections and safeguards" and "a shocking abuse of judicial discretion" are not sufficient to transform his Ground One claim into a cognizable habeas claim. See Leatherwood, 861 F.3d at 1043 (noting that "[a] habeas applicant cannot transform a state law claim into a federal one merely by attaching a due process label"). And, even if this Court liberally construes Hartness's petition as sufficiently alleging a due process claim, see Hall, 935 F.2d at 1110, the Court finds that Hartness is not entitled to habeas relief. Significantly, the state district court afforded Hartness procedural "due process protections and safeguards" by holding a revocation hearing on the alleged probation violations, providing Hartness with the right to have the state bear the burden of proving those alleged violations (a right which he waived by stipulating to them), and permitting Hartness to present his mitigating circumstances before issuing its decision to revoke his sentence. See Dkt. # 6-3; see also Leatherwood, 861 F.3d at 1044 (discussing procedural due process protections). Thus, the Court finds no support in the record for any alleged procedural due process violation.

---

[7] On December 20, 2016, Hartness filed a document entitled "Supplemental to Writ of Habeas Corpus" (Dkt. # 10). Because Hartness filed this "Supplemental" more than 21 days after serving his original petition on Bryant, the Court will construe it as a motion for leave to supplement the petition. See FED. R. CIV. P. 15(a); see also 28 U.S.C. § 2242 (providing that habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). But Hartness's request to supplement his Ground One claim by pointing out recent changes in state law, see Dkt. # 10 at 1, only bolsters this Court's conclusion that the Ground One claim alleges an error of state law. Based on that conclusion, the Court denies Hartness's motion to supplement his habeas petition.

Likewise, the Court finds no support in the record for any alleged substantive due process violation. The revocation of a suspended sentence may violate substantive due process "when it is 'fundamentally unfair or arbitrary.'" Leatherwood, 861 F.3d at 1045 (quoting Bearden v. Georgia, 461 U.S. 660, 666 (1983)). But substantive due process only "guards against the arbitrary exercise of governmental power that shocks the conscience." See id. at 1046 n.11. The Court finds nothing in the record to support a conclusion that the state district court's revocation decision was either fundamentally unfair or so arbitrary that it shocks the Court's conscience. At the revocation hearing, Hartness—through his counsel's arguments and his own testimony—urged the court to consider his mitigating circumstances. See Dkt. # 6-3 at 5-12. The court did so. Id. at 11-12. But the court reasoned that those circumstances did not outweigh the fact that Hartness repeatedly failed to comply with the conditions of his probation, most often by committing new crimes each time he was released from prison. See id. at 6-12. Thus, the Court finds no support in the record for any alleged substantive due process violation.

In sum, Hartness's Ground One claim alleges an error of state law, not a cognizable habeas claim. And, even if the Court liberally construes Hartness's Ground One claim as alleging either a procedural or substantive due process claim, each of those claims fails on the merits. For these reasons, the Court shall deny federal habeas relief on Ground One.

**B.      Grounds Two and Three are time barred**

In Ground Two of his petition, Hartness alleges that "[a]t the original trial on 4-24-00" he neither fully comprehended the proceedings nor fully appreciated the consequences of his plea agreement. Dkt. # 1 at 7. In Ground Three, Hartness alleges that because he had at least six prior

felonies, the state district court lacked authority to impose "an original split sentence in 2000," thus his suspended sentence "should be void." Id. at 8.

Bryant contends that these claims are time barred under § 2244(d) because they "challenge the validity of the suspended sentence imposed on April 24, 2000." Dkt. # 5 at 7.[8] Bryant further contends that Hartness is not entitled to either statutory or equitable tolling. Id. at 7-12. In his reply brief, Hartness appears to contend that if these claims are time barred, then he is entitled to both statutory and equitable tolling. See Dkt. # 9 at 2-7.

The Court agrees with Bryant that the claims asserted in Grounds Two and Three are untimely. The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted April 24, 1996, established a one-year limitation period for filing habeas corpus petitions. 28 U.S.C. § 2244(d). AEDPA's one-year limitation period applies to all habeas petitions filed by state prisoners whether brought under § 2241 or § 2254. See Burger v. Scott, 317 F.3d 1133, 1138 (10th Cir. 2003) (§ 2241 petitions); Gibson v. Klinger, 232 F.3d 799, 802-03 (10th Cir. 2000) (§ 2254 petitions). In general, the limitation period begins to run from the date on which a prisoner's conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). But it may also commence at a later start date under the terms of §

---

[8] Because Bryant seeks dismissal of these claims on timeliness grounds, the Court will assume without deciding that both claims allege cognizable habeas claims. Bryant also seeks dismissal of Ground Five on timeliness grounds. Dkt. # 5 at 7. But the Court will not extend the same assumption to Ground Five because the Court finds that Ground Five does not state a coherent claim, let alone a cognizable habeas claim. In Ground Five, Hartness "ask[s] the [C]ourt to consider the updated Federal Sentencing Guidelines" and disparities between the sentences he received in Osage County and Tulsa County because (1) his "excessive revokation [sic] shocks the conscious" and (2) he "feel[s] a reevaluation of the 2000 sentence is in order." Dkt. # 1 at 12. Even liberally construed, Hartness appears to assert his Ground Five "claim" to either (1) further support his Ground One claim or (2) request that this Court modify his sentence. As a result, the Court cannot reasonably read Hartness's Ground Five claim as alleging a cognizable habeas claim. For that reason, the Court shall deny habeas relief on Ground Five.

2244(d)(1)(B), (C), and (D). Regardless of which date the one-year limitation period commences, the period is statutorily tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). And, because AEDPA's one-year limitation period is not jurisdictional, the untimeliness of a habeas petition may be excused through equitable tolling, Holland v. Florida, 560 U.S. 631, 645 (2010), or may be "overcome" through "a credible showing of actual innocence," McQuiggin v. Perkins, 569 U.S. 383, 392 (2013).

Applying § 2244(d)(1)(A), Hartness' Ground Two and Ground Three claims are untimely.[9] Hartness was convicted and sentenced upon guilty pleas that he entered on April 24, 2000. Dkt. # 1 at 1. Under Oklahoma law, Hartness was required to move to withdraw his pleas within 10 days of sentencing before filing a certiorari appeal with the OCCA. Rule 4.2(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2017). Because he did not move to withdraw his pleas or file a certiorari appeal, his convictions became final on May 4, 2000, when the time to do so expired. See 28 U.S.C. § 2244(d)(1)(A); Fleming v. Evans, 481 F.3d 1249, 1255 (10th Cir. 2007). His one-year limitation period therefore ran from May 5, 2000 to May 5, 2001. See Harris v. Dinwiddie, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (applying FED. R. CIV. P. 6(a)(1)(A) to exclude

---

[9] Even liberally construed, Hartness's arguments suggest only one alternative commencement date, i.e., "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Hartness appears to argue that he did not know until his second revocation hearing that his suspended sentence was "void." See Dkt. # 1 at 7-8; Dkt. # 9 at 4-7. But, as Bryant argues, under § 2244(d)(1)(D), the limitation period begins to run when the petitioner knows the facts giving rise to his habeas claims, not the legal significance of those facts. See Dkt. # 5 at 9; Preston v. Gibson, 234 F.3d 1118, 1120 (10th Cir. 2000). Because Petitioner knew in 2000 that he received a suspended sentence, § 2244(d)(1)(D) does not apply. Thus, the Court will consider timeliness only under § 2244(d)(1)(A).

12

day of event that triggers commencement of AEDPA's one-year limitation period). Hartness filed the instant habeas petition on November 14, 2014, over 13 years after his one-year limitation period expired. And, because he filed his first application for state post-conviction relief on April 30, 2014, see Dkt. # 5-4, that application had no tolling effect under § 2244(d)(2). See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2014) (explaining that "only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations"). Thus, unless he can demonstrate that he is entitled to equitable tolling, his claims are time barred.

Because AEDPA's one-year limitation period is not jurisdictional, it "is subject to equitable tolling in appropriate cases." Holland, 560 U.S. at 649. To obtain equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of his federal habeas petition. Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). This is a "strong burden" that requires the petitioner to "show specific facts to support his claim of extraordinary circumstances and due diligence." Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2000)).

Hartness appears to seek equitable tolling on three grounds: (1) his specific lack of knowledge as to "the 1996 AEDPA new law" and his general lack of legal knowledge, (2) his "mental, cognitive, and emotional insufficiencies," and (3) ineffective assistance of counsel. Dkt. # 9 at 2-7, 10-13. Even assuming that Hartness's reasons constitute "extraordinary circumstances," the Court agrees with Bryant that Hartness cannot demonstrate that he has been pursuing his rights diligently as to the claims he asserts in Grounds Two and Three. As discussed, in April 2000 Hartness entered guilty pleas on two felony counts in exchange for a controlling sentence of 45

13

years, with all but the first seven years suspended. Dkt. # 1 at 1. The state district court advised Hartness of his appeal rights (1) at his sentencing in 2000, see Dkt. # 6-1 at 13, (2) again at his first revocation hearing in 2006, see Dkt. # 6-2 at 5-6, and (3) a third time at his second revocation hearing in 2012, see Dkt. #6-3 at 12. But Hartness did not file a direct appeal with the OCCA until 2012 when the district court suspended his sentence in full. Dkt. # 5-3 at 2. Even then, Hartness raised only two claims, neither of which challenged the validity of the imposition of his allegedly illegal sentence. See id. Instead, Hartness first claimed that he did not understand his plea agreement and first challenged his allegedly illegal sentence when he sought post-conviction relief in 2014. See Dkt. # 5-4 at 1-5. Under these circumstances, the Court finds that Hartness has not demonstrated that he diligently pursued his rights to assert the claims raised in Grounds Two and Three of his habeas petition and, therefore, that equitable tolling is not warranted.

Additionally, to the extent that Hartness asserts that a "miscarriage of justice" will result if the Court declines to review his time barred claims, the Court disagrees. As stated, the Supreme Court has recognized an equitable exception to the one-year limitation period for petitioners who make "a credible showing of actual innocence," Perkins, 569 U.S. at 392. But Hartness does not assert that he is actually innocent; rather, he has expressed a desire to maintain his guilty pleas while simultaneously seeking relief from what he claims is an "illegal" sentence. See Dkt. #5-4 at 2; Dkt. # 5-6 at 6. Thus, Hartness has not shown that Perkins' equitable exception applies.

Because Hartness's Ground Two and Ground Three claims are time barred, the Court shall dismiss those claims with prejudice. [10]

**C.      Ground Four is procedurally barred**

In Ground Four, Hartness alleges that he received ineffective assistance of counsel during his direct appeal from the second revocation. Dkt. # 1 at 10. Specifically, he asserts that counsel was ineffective for failing to argue that his suspended sentence was void under the reasoning of Bumpus. Id.; see also Dkt. # 5-6 at 8. Hartness presented this claim to the OCCA in his post-conviction application, but the OCCA declined to review it because Hartness did not raise it in his post-conviction application. See Dkt. # 5-6 at 8; Dkt. # 5-7 at 2.

Bryant contends that this claim is procedurally barred because the OCCA determined that Hartness defaulted this claim by failing to comply with Oklahoma's procedural rules. Dkt. # 5 at 13-16. Bryant further contends that Hartness has not demonstrated cause for the default and actual prejudice resulting from the alleged constitutional violation or that failing to review his ineffective-

---

[10]     Even if not time barred, it appears that Hartness would not be entitled to habeas relief on these claims. Harness rests both claims on the premise that he received an "illegal" sentence and that, under the reasoning of Bumpus, his suspended sentence is "void." See Dkt. # 1 at 7-8; Dkt. # 5-6 at 5-7. But Hartness's challenge to the legality of his sentence does not appear to state a cognizable habeas claim. See Gist v. Evans, 587 F. App'x 490, 493 (10th Cir. 2014) (unpublished) (noting in dicta that "although [petitioner] identifies the issue of his allegedly illegal suspended sentence as a 'due process' violation, the claim amounts to a challenge of a pure issue of state law and, therefore, cannot be the basis of federal habeas relief"). And, in any event, Bumpus appears distinguishable. There, the OCCA interpreted a prior version of OKLA. STAT. tit. 22, § 991a(C) that strictly prohibited the imposition of a suspended sentence for repeat felony offenders, whereas the version applied by the state district court in this case permitted waiver of the statutory prohibition against imposing a suspended sentence for repeat felony offenders on written application by the district attorney. See supra notes 3 and 5. Here, the record shows that the district attorney applied for a waiver as part of the plea agreement with Hartness. Dkt. # 6-1 at 9-10.

15

assistance-of-appellate-counsel claim would result in a miscarriage of justice. Id. at 14-17. In his reply brief, Hartness asserts that his Ground Four claim is not procedurally barred "due to: (i) cause and actually prejudice, (ii) miscarriage of justice, (iii) unfairness, (iv) taking deliberate advantage of a Pro Se layman, (v) constitutional violations, and (vi) the interest of justice." Dkt. # 9 at 9.

The Court agrees with Bryant that Hartness's Ground Four claim is procedurally barred. Under the doctrine of procedural default, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." Davila v. Davis, 137 S. Ct. 2058, 2064 (2017). A state procedural rule "is independent if it is separate and distinct from fedeal law," and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

Here, the OCCA declined to review Hartness's ineffective-assistance-of-appellate-counsel claim because he failed to raise it to the district court in his post-conviction application. Dkt. # 5-7 at 2. See Rule 5.2(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2017) ("The appeal to [the OCCA] under the Post-Conviction Procedure Act constitutes an appeal from the issues raised, the record, and findings of fact and conclusions of law made in the District Court in non-capital cases."). Hartness does not argue, either in his petition or his reply, that the OCCA's refusal to review his ineffective-assistance-of-appellate-counsel claim was not based on an adequate and independent state procedural rule. See Dkt. ## 1, 9. Thus, Ground Four is procedurally defaulted.

16

However, a federal court may review a procedurally defaulted claim if "the prisoner can [1] demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or [2] demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Hartness repeatedly mentions "miscarriage of justice" in his reply brief, but he does not suggest that he can prove his factual innocence. See Dkt. # 9. Thus, the miscarriage-of-justice exception does not apply. See Magar v. Parker, 490 F.3d 816, 820 (10th Cir. 2007) (noting that the miscarriage-of-justice exception is "implicated only in 'extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent'" (quoting Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999))).

Similarly, while Hartness repeatedly refers to "cause and prejudice," he fails to demonstrate either. See Dkt. # 9. To show "cause" for a procedural default, the petitioner must show that "something *external* to [the petitioner], something that cannot fairly be attributed to him . . . 'impeded his efforts to comply with the State's procedural rule.'" Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). In his reply brief, Hartness contends that he first discovered "the significance of his split sentence" in October 2012 and communicated his concerns to his appellate counsel. Dkt. # 9 at 4. He also attaches a response letter from appellate counsel, dated February 20, 2013. Id. at 15. In the letter, appellate counsel acknowledged that Hartness expressed interest in raising a Bumpus claim to challenge to his suspended sentence, and explained why that claim would not be favorably received by the OCCA. Id. Appellate counsel filed Hartness's direct appeal brief on February 28, 2013, but did not include a Bumpus claim. Dkt. # 5-1. Hartness filed his application for post-conviction relief over one year later, on April 30, 2014. Dkt.

17

# 5-4. Yet, Hartness fails to explain why he included a <u>Bumpus</u> claim in his post-conviction application but failed to also include his related ineffective-assistance-of-appellate counsel claim. <u>See</u> Dkt. # 9. Because Hartness's failure to comply with the state's procedural rules appears to be based on his own oversight, rather than some external factor, he fails to establish cause for his procedural default. <u>See</u> <u>Coleman</u>, 501 U.S. at 753. And, because Hartness fails to allege cause for the procedural default, the Court finds it unnecessary to decide whether he can establish actual prejudice.

In sum, Hartness's Ground Four claim is procedurally defaulted and he fails to make the requisite showing to overcome that default. Thus, the Court shall deny federal habeas relief on Ground Four.

*CONCLUSION*

Based on the foregoing analysis, the Court finds that Hartness is not entitled to habeas relief on Grounds One, Four and Five, and that Grounds Two and Three are time barred.

**Certificate of Appealability**

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court has rejected a petitioner's constitutional claims on the merits, the applicant must make this showing by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). But, when the district court rejects a petitioner's claims on procedural

grounds, the petitioner must show both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. For the reasons stated in the analysis section of this opinion, the Court finds that Petitioner has not made the requisite showings to obtain a COA. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of the Court shall note the substitution of Jason Bryant, Warden, in place of Janet Dowling as party respondent.

2. Hartness's "Supplemental to Writ of Habeas Corpus" (Dkt. # 10), construed as a motion to supplement his habeas petition, is **denied**.

3. The petition for a writ of habeas corpus (Dkt. # 1) is **dismissed with prejudice** as to Grounds Two and Three, and **denied** as to Grounds One, Four and Five.

4. A certificate of appealability is **denied**.

5. A separate Judgment shall be entered in this case.

**DATED** this 26th day of January, 2018.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE